## In the Matter of Ronald WARRUM.

### No. 82S00–9612–DI–790.

Supreme Court of Indiana.

March 10, 2000.

R. Stephen LaPlante, Evansville, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Seth T. Pruden, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM.

When attorney Ronald Warrum went before the Vanderburgh Superior Court on behalf of his client seeking increased child support and restricted visitation, he failed to notify that court of an existing Utah decree, known to him, which already governed those post-dissolution matters. We find that his failure to notify the Indiana court of the Utah decree was prejudicial to the administration of justice.

 This attorney disciplinary case comes before this Court upon the duly-appointed hearing officer's findings of fact and conclusions of law. In that report, the hearing officer found misconduct and recommended that the respondent be publicly reprimanded. Pursuant to Ind.Admission and Discipline Rule 23(15), the respondent has petitioned this Court for review of the hearing officer's report, therein challenging certain findings contained therein. Where the hearing officer's report is challenged, our review of the case is *de novo*, and we examine the entire record in determining misconduct and discipline therefor. *Matter of Hampton*, 533 N.E.2d 122 (Ind. 1989). The respondent's admission to the bar of this state in 1966 confers our jurisdiction in this matter.

Within that review context, we now find that a couple married in 1982, had a child in 1983, and lived in the state of Utah until their separation in 1984, after which the wife moved to Evansville with the child. On March 21, 1985, the couple was divorced by order issued by the Fourth District Court, Millard County, Utah. The decree awarded custody to the wife and ordered the husband to pay child support of $50 per month.

 After moving to Evansville, the wife received Assistance for Dependent Children from Vanderburgh County and assistance in collecting her Utah support pursuant to a Uniform Reciprocal Enforcement of Support Act action filed by the Vanderburgh County prosecutor. In 1991, the former wife petitioned the Utah court for an increase in her former husband's child support obligation. While the contemplated Utah modification was pending, she hired the respondent in July 1992 to secure additional support and to restrict her former husband's visitation with the child. On July 31, 1992, the respondent filed a complaint in the Vanderburgh Superior Court seeking an order for "child support, child custody and visitation, or a modification thereof" (hereinafter the "Indiana case").[1] The complaint did not mention the Utah decree, did not mention the terms or conditions of the Utah decree, and did not set forth the former husband's current child support obligation as a consequence of that decree. Also, the complaint failed to mention that matters relating to support were pending before the Utah court. At hearing of this disciplinary case, the respondent testified that he knew of the Utah decree, but not that a motion for modification of it was pending. He took no action to learn the details or status of the Utah decree.

After the former husband was notified of the Indiana case, he contacted the respondent by telephone to provide information about his employment and income. In September 1992, the former husband's attorney wrote to the respondent, asking why there was an Indiana proceeding. The respondent did not reply. Initial hearing on the respondent's complaint was held in Vanderburgh Superior Court on

---

1. The full text of the complaint is as follows:
 Comes now [former wife] and for her claim against [former husband] says:
 1. [Former wife] is the mother of ... a minor child born on March 10, 1983.
 2. [Former wife and minor child] reside at ... Evansville, Indiana and have resided in Indiana since April, 1984.

3. [Former husband's] last known address was at ... Sandy Utah 84092.
4. Petitioner requests an order of support, child custody and visitation, or modification thereto, all pursuant to Title 31.1–11.5 and/or 11.6.

November 30, 1992. The former wife appeared with the respondent, but the former husband did not. The respondent provided the court with a child support income calculation and requested restriction of the former husband's visitation. The respondent did not mention the Utah decree, its terms, or the pending modification thereof. Two weeks later, the Vanderburgh Superior Court adopted the respondent's proposed entry of judgment which ordered the former husband to pay $77.40 in weekly child support pursuant to the Indiana Child Support Guidelines and which restricted the former husband's visitation to supervised visits only. A wage withholding order was sent to the former husband's employer in Utah. The Vanderburgh Superior Court's judgment did not mention the Utah decree or how it was to be modified, despite the fact that the respondent testified at disciplinary hearing that, by his Indiana case, he was attempting to "modify" the Utah decree. The order of judgment issued by the Vanderburgh Superior Court effectively became a second decree of child support for the former husband.

No one in Indiana notified Utah authorities of the Vanderburgh Superior Court's decree. Although the husband continued to pay his Utah support, he did not pay support pursuant to the Indiana order, and an arrearage accumulated. The former wife later asked the Vanderburgh County prosecutor to assist her in collecting the overdue support. Although the prosecutor's office had a reciprocal action pending with Utah with respect to the support obligation of the first Utah decree, neither that office nor the Utah authorities knew of the Vanderburgh Superior Court's order until informed of it by the former wife. With knowledge of the order, the Vanderburgh County prosecutor intercepted at least three of the former husband's tax refund checks to satisfy the Indiana arrearage. The former husband, being in compliance with the Utah order, complained to Utah authorities.

Child support authorities of Utah and Indiana conducted a complete investigation of the matter. Utah authorities were concerned that Indiana had issued a second support order when no transfer of the case from Utah to Indiana had ever been made. Indiana authorities could not understand why Utah's support obligation was so low. The governor's offices in each state became involved, as did a U.S. senator from Utah and the Family and Social Services Administration of Indiana. A dispute arose over which state had jurisdiction and what the true amount of the support should be. To resolve it, officials from both states met before a mediator in Chicago. That mediation was unsuccessful, and certain disputes between the states still existed at the time of the disciplinary hearing of this matter. In 1994, the petition to modify the Utah decree to provide additional support was granted, and the Vanderburgh County prosecutor moved to dismiss the Indiana support judgment, although still contending that a valid Indiana arrearage existed.

Although the respondent asserted in his complaint that Indiana had jurisdiction of the former husband's support and visitation by virtue of Ind.Code 31–1–11.6 *et seq.* (Indiana's Uniform Child Custody Jurisdiction Law),[2] he failed to submit an affidavit required by that law to inform Indiana courts of previous child custody proceedings. He also admitted at disciplinary hearing that he was aware at the time he filed the Indiana case of a possible jurisdictional dispute in light of the Utah decree.

Professional Conduct Rule 8.4(d) provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. The respondent's failure to inform the Indiana court of the Utah decree led to competing orders, duplicitous litigation in Utah and Indiana, and a protracted controversy between states as to which child support/visitation order should control.

2. Repealed by P.L. 1–1997, SEC. 157.

Considerable resources of both states were expended, first in addressing similar issues of support and visitation, then in trying to resolve the conflict between the states. The respondent's unfortunate failure to disclose the Utah decree to the Indiana court was completely contrary to the letter and spirit of Indiana's Uniform Child Custody Jurisdiction Law, which was to "[a]void litigation of custody decisions of other states and this state so far as feasible," and to "[f]acilitate the enforcement of custody decrees of other states; and [foster] mutual assistance between the courts of this state and those of other states concerned with the same child." *See* I.C. 31–1–11.6–1, *repealed by* P.L. 1–1997, SEC. 157. That the respondent's actions so thoroughly frustrated the purpose of the UCCJL, wasted judicial resources, and led to an interstate conflict clearly demonstrates that he engaged in conduct prejudicial to the administration of justice. Accordingly, we find that the respondent violated Prof.Cond.R. 8.4(d).

 The respondent argues that "party opponents" (in this case the former husband) have no standing to institute disciplinary proceedings. He bases this assertion on language in the Preamble to the *Rules of Professional Conduct*:

> The fact that a rule is a just basis for a lawyer's self assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, *does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.* (Emphasis added).

3. The hearing officer found that the respondent violated Prof.Cond.R. 3.3(a)(3), which provides that a lawyer shall not knowingly fail to disclose to a tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel. Although it is clear that the respondent knew of the authority of the Utah decree, his failure to disclose its existence to the Indiana court did not violate the rule because the order was not "adverse" to his client's position. The Utah decree provided child support for the client's child and set visitation restrictions,

The respondent's argument is without merit. The very language he cites provides that the disciplinary rules are a just basis for a disciplinary authority to sanction a lawyer. Indiana Admission and Discipline Rule 23(10)(a) provides that a member of the public, a member of this bar, a member of the commission, or a Bar Association may submit a grievance to the Disciplinary Commission. The "collateral proceeding" reference in the Preamble is clearly intended to encompass litigation other than disciplinary actions.[3]

 Having found misconduct, we now turn to the issue of appropriate sanction. The hearing officer recommended that the respondent be publicly admonished for his actions. We agree. The evidence clearly and convincingly demonstrates that the respondent knew of the Utah decree at the time he litigated the Indiana case, but neglected to advise the Indiana court of it or its terms. By that failure, the respondent deprived the Indiana judge of the opportunity to apply the provisions set forth in Indiana's UCCJL, caused unnecessary litigation in this state, and set the stage for an interstate conflict ultimately consuming the resources of high state officials. Because of his insult to the administration of justice and its significant consequences in this case, we conclude that a public reprimand is appropriate.[4]

It is, therefore, ordered that the respondent, Ronald Warrum, is hereby reprimanded and admonished for this his misconduct.

thereby providing benefits not adverse to his client's position in the Indiana proceeding. We therefore conclude that the Commission failed to demonstrate that the respondent violated Prof.Cond.R. 3.3(a)(3).

4. We note that in a similar case, where the gravamen of the lawyer's misconduct was failure adequately to disclose pertinent matters to a court, a public reprimand was ordered. *Matter of Mullins*, 649 N.E.2d 1024 (Ind.1995) (failure to disclose parallel intrastate court proceedings).

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc. R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against respondent.